IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 27, 2011

## IN THE MATTER OF: ELIZABETH N. M. ET AL.

**Appeal from the Juvenile Court for Bedford County**
**No. 3455      Charles Rich, Judge**

---

**No. M2011-00724-COA-R3-PT - Filed October 19, 2011**

---

The mother of two minor children appeals the termination of her parental rights. She contends the evidence did not clearly and convincingly establish a statutory ground supporting termination of her rights or that termination was in the children's best interests. We have determined that the evidence clearly and convincingly supports the trial court's findings and, thus, affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Trisha A. Bohlen, Bell Buckle, Tennessee, for the appellant, Ethel M. S.

Robert E. Cooper, Jr., Attorney General and Reporter, and Marcie E. Greene, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

## OPINION

Elizabeth N. M., born in May of 1999, and Brook S., born in May of 2002, are the subject of this action to terminate the parental rights of their parents. They have the same mother, Ethel M. S., but they have different fathers. The parentage of the father of Elizabeth and the father of Brook were established, and both men voluntarily surrendered their parental rights and are no longer parties to this action. The only appellant is Ethel M. S. ("Mother").

Although the Tennessee Department of Children's Services has an extensive history with Mother that goes back many years, matters leading up to this action arose on October 11, 2006, when the Department received a referral stating that the children were living in a tent in someone's backyard and were extremely dirty. An investigation was conducted that

confirmed the referral. The investigator administered drug tests to the parents. Mother tested negative for drugs; Brook's father (hereinafter "Mr. M."), who was living with Mother and the children, tested positive for cocaine. During the investigation, Mother also admitted that she had prior involvement with the Department of Human Resources of the State of Alabama, which arose from allegations that she was not taking proper care of her children.

On November 3, 2006, the Department filed a petition to adjudicate Elizabeth and Brook dependent and neglected because of the above facts. The court appointed counsel to represent Mother and, thereafter, Mother agreed to a safety plan. By order entered on December 19, 2006, the children were declared dependent and neglected; however, they were allowed to remain in Mother's custody. As is customary with such cases, the case was set for periodic reviews by the trial court.

No incidents arose thereafter until June 14, 2007, when the Department filed an emergency motion to modify the safety plan due to the fact Mother's youngest child, who was one month old at the time, was found dead at Mother's home. By order signed by the trial judge on June 23 and entered on July 7, 2007, the court placed the children with the paternal aunt and Mother's contact with the children was restricted to supervised visitation. Following a review hearing attended by the parties and their counsel on September 17, 2007, the court found that the Department had provided reasonable efforts to prevent the removal of the children, Elizabeth and Brook, that a Court Ordered Safety Plan had been in effect since November 2006, that Mother's one month old child had been found dead in her home, that the court had placed the children with relatives, that the relatives were not able to care for the children on a long term basis, and that the court found that the Safety Plan was no longer adequate. Based upon these findings, custody of the children was removed from the parents and legal custody was placed with the Department. As before, the case was set for periodic review.

Nineteen months later, on January 3, 2009, following a successful trial home visit, Elizabeth and Brook were returned to their mother's custody to reside with her.

A mere three months later, on April 3, 2009, the Department filed a petition seeking a restraining order against Mother and Mr. M. based upon allegations that he sexually abused Elizabeth in their home. During interviews by an investigator for Child Protective Services, it was discovered that the sexual abuse had occurred at least six times; the first occurring prior to the children's previous removal from Mother's custody. In order to convey exactly what had occurred and how it occurred, at the request of the investigator Elizabeth drew a picture depicting several sexual acts. She also explained what had occurred. Elizabeth's drawings and accompanying explanation depicted and described overt sexual acts, both oral and anal, and descriptions of bodily functions in details of which a child her age would have

no knowledge but from personal experience. Elizabeth informed the investigator that these events occurred while her mother was home. Elizabeth also described a tattoo on Mr. M's. body that could only be seen when he was not wearing underpants. It was later confirmed that Mr. M. had a tattoo matching the description in the location Elizabeth stated.

The investigator and a detective also questioned Mr. M., but only briefly because he was drunk. Mr. M. subsequently took a polygraph examination, which he failed in reference to questions of sexual abuse of Elizabeth. Mother was informed of the results after which she signed a protection agreement pursuant to which Mother expressly agreed to prohibit Mr. M. from having any contact with her children. The Juvenile Court also issued a restraining order prohibiting Mr. M. from having any contact with either child and prohibiting Mother from allowing Mr. M. to have any contact with the children. The CPS investigator informed Mother of the issuance of the restraining order and the restrictions stated therein.

Eight months later, on December 15, 2009, the Department responded to allegations that Mother had allowed Mr. M. to be in contact with her children and that Mr. M. had again sexually abused Elizabeth. Pursuant to protocol, Tammie Howell, an investigator, and Edna Jenkins, a forensic interviewer, interviewed Elizabeth at Junior's House Child Advocacy Center. Elizabeth informed them that on the previous evening, December 14, her mother left her alone in their home with Mr. M. while she went to the store. Elizabeth also informed the investigator and forensic interviewer that Mr. M. made her perform oral sex on him, that he preformed oral sex on her, and that he penetrated her bottom with his penis.

The investigator, along with a detective, questioned Mother at her home. She admitted that she had left Elizabeth at home that evening while she went to the store; however, she first insisted that a friend stayed with Elizabeth and that Mr. M. had not been at the home. Upon further questioning, Mother admitted that the children "might have seen" Mr. M. out in public but not at home; then she became very defensive and did not want to answer any more questions. Prior to the conclusion of the interview, however, Mother admitted that Mr. M. had been at the home that night but "only in the yard." She later admitted – to no one's surprise – that this was a lie.

Subsequently, Ms. Howell questioned Brook while they were on the way to the Department's office. Although Brook had previously told Ms. Howell that she only sees Mr. M. at the store, not at home; Brook admitted that she sees him at home because he comes over to visit Mother, Brook, and Elizabeth at night. Brook also explained that she had not told the truth earlier because her mother told her what happens in their house stays in their house. Mother subsequently admitted that she instructed the children that "whatever happens in the house, stays in the house."

The children were again removed and placed into the Department's protective custody on December 15, 2009. The reasons for the emergency removal were revealed in the petition filed on December 17, 2009. In the petition the Department alleged that Mr. M. had again sexually abused Elizabeth and that the severe abuse was due in part to the failure of Mother to protect the children from Mr. M. The adjudicatory hearing was waived by Mother with her counsel's consent, a protective custody order was entered, and the children were placed in the custody of the Department. Mother and Mr. M. were ordered to have no contact with the children.

Thereafter, Mother and the case worker agreed upon a Permanency Plan, which was ratified by the court on April 12, 2010, and the Department continued to exert reasonable efforts to reunite Mother with her children or, alternatively, to make a permanent and appropriate placement for the children.

In the interim, due to the recurring sexual assaults and Mother's failure to protect the children, the Department filed the appropriate motions seeking permission to be relieved of the affirmative duty to make reasonable efforts to reunite Mother with the children. During the evidentiary hearing on the motion, which occurred on June 21, 2010, Mother admitted the children were dependent and neglected and severely abused. Following the evidentiary hearing, the Juvenile Court found that the children had been severely abused pursuant to Tenn. Code Ann. § 37-1-102(b)(23)(C). The court also found, based on the finding of severe abuse and Mother's complicity by failing to protect the children, that the Department was no longer required to exert reasonable efforts toward reunification. The court also explained its ruling to Mother, specifically that the Department was no longer required to assist her.

Thereafter, the Department filed separate petitions to terminate Mother's parental rights and the parental rights of the father of Elizabeth and the father of Brook.[1] Both petitions came on for trial on March 14, 2011. Witnesses called by the Department to prove its cases included Ms. Tammie Howell, a forensic interviewer and former CPS investigator, Ms. Sonya Stewart, one of the CPS investigators, and Ms. Jennifer Brown, a family services worker with the Department. Mother, who was represented by counsel at all material times in these proceedings, testified in defense of the petitions.

---

[1] The petition to terminate the parental rights of Brook's father and Mother was filed on August 20, 2010; the petition as to Elizabeth's father and Mother was filed on October 1, 2010. Both men voluntarily surrendered their parental rights prior to the final hearing and neither of them participated in the final hearing. Although two separate petitions were filed, they were assigned the same docket number and were tried together.

By order entered on March 28, 2011, the Juvenile Court found that the Department had proven three statutory grounds by clear and convincing evidence upon which Mother's rights could be terminated: severe child abuse, substantial noncompliance with her responsibilities in the permanency plans, and failure to remedy the conditions that led to the removal of the children. The court also found that clear and convincing evidence had been presented to establish that termination was in the best interests of Elizabeth and Brook. Based upon the above findings, the Juvenile Court entered a judgment terminating Mother's parental rights to both children. This appeal by Mother followed.[2]

## ANALYSIS

Parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). The petitioner has the burden of proving that there exists a statutory ground for termination, such as abandonment or failure to remedy persistent conditions that led to the removal of the child. Tenn. Code Ann. § 36-1-113(c)(1); *Jones*, 92 S.W.3d at 838. Only one ground need be proven, so long as that ground is proved by clear and convincing evidence. *See In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). In addition to proving one of the grounds for termination, the petitioner must prove that termination of parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re F.R.R.*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re A.W.*, 114 S.W.3d 541, 544 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000) (holding a court may terminate a parent's parental rights if it finds by clear and convincing evidence that one of the statutory grounds for termination of parental rights has been established and that the termination of such rights is in the best interests of the child).

We have carefully examined the evidence in this record and determined that the testimony by the witnesses on behalf of the Department at trial, along with the business records and other documentary evidence introduced into evidence, clearly and convincingly proved three statutory grounds for termination, including that of severe child abuse under Tenn. Code Ann. § 36-1-113(g), and proved that termination of Mother's parental rights was in the best interests of the children under Tenn. Code Ann. § 36-1-113. As noted above, a court may terminate a person's parental rights if the existence of at least one statutory ground is proven and it is proven that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 810; *In re Valentine*, 79 S.W.3d at 546. Having determined that the requisite statutory requirements

---

[2]As both Brook's father and Elizabeth's father voluntarily surrendered their parental rights, and the Juvenile Court entered final judgments terminating their respective parental rights, the termination of both men's parental rights is final and *res judicata*.

have been established in order to terminate Mother's parental rights to Elizabeth and Brook, we affirm the trial court in all respects.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Department of Children's Services due to the appellant's indigence.

_____
FRANK G. CLEMENT, JR., JUDGE